UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| STEVE MOORE, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. C-11-22 |
| | § | |
| CITGO REFINING AND CHEMICALS | § | |
| COMPANY, LP, | § | |
| | § | |
| Defendant. | § | |

**ORDER DISMISSING CERTAIN PLAINTIFFS**

On February 23, 2012, the Court held an evidentiary hearing to address the allegations of defendant CITGO Refining and Chemicals Company, LP, ("CITGO"), that certain plaintiffs had willfully failed to comply with prior Court orders concerning the preservation of evidence. As set forth herein, the Court finds that the conduct of plaintiffs Craig Corley, Russell Edlin, Jerry Davila, and David Ruiz warrants that their claims against defendant CITGO be dismissed with prejudiced.

**I.      Jurisdiction.**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as this suit is brought under the Fair Labor Standards Act ("FSLA"), 29 U.S.C. § 207 *et seq*.

**II.      Factual and procedural background.**

Plaintiffs are current and former employees of CITGO. On February 1, 2011, plaintiffs filed their original complaint alleging that CITGO violated provisions of the FLSA when it improperly characterized plaintiffs as "non-exempt" employees in order to avoid paying them overtime wages. (*See* D.E. 1, plaintiffs' original complaint).

Pursuant to the Joint Discovery/Case Management Plan (D.E. 8), in April 2011, CITGO served plaintiffs with interrogatories and requests for production.

On August 22, 2011, the Court held a telephone conference to address CITGO's complaint that certain plaintiffs were failing to comply with propounded discovery requests. Following the hearing, the Court entered an order (the "August 22, 2011 discovery order"), setting forth specific instructions for the plaintiffs to follow as to the discovery issues in dispute. (*See* D.E. 17).   For example, the parties were in disagreement as to CITGO's Interrogatory No. 16.  Interrogatory No. 16 read:

> Identify, describe, and specify all email addresses you used or accessed during your scheduled CITGO work hours or during work hours you worked for CITGO since January 1, 2008.

(D.E. 17 at 6).

As to Interrogatory No. 16, the Court ordered plaintiffs as follows:

> It is ORDERED that Plaintiffs are to use their best efforts to provide CITGO with the following: (1) a summary of their personal efforts to retrieve the information requested; (2) an estimate of time spent during each scheduled workday using or accessing non-CITGO e-mail accounts; and (3) a summary of their efforts to retrieve e-mail information relating to any stock trades that Plaintiffs may have engaged in during the workday.

> It is further ORDERED that Plaintiffs are to save and print out the requested information and provide it to CITGO.

> If the requested information is not readily available, the Plaintiffs are ORDERED to (1) state that the information is unavailable; (2) the amount of time it will take to retrieve the information; and (3) the cost of retrieving the information.

> It is further ORDERED that Plaintiff's provide CITGO with (1) an estimate of the percentage of e-mails that have been deleted; and (2) the approximate date such e-mails were deleted by Monday, September 12, 2011.

(D.E. 17 at 6).

In addition, the parties were in disagreement as to CITGO's requests for production nos. 9 and 41. Request for Production No. 9 requested:

> All documents prepared by you that you used, or that assist or have assisted you, in the operation of your console since January 1, 2008, including, but not limited to, trend charts, yield reports, logs, journals, and any other materials you review, prepare or exchange before you begin or end shift.

(D.E. 17 at 8 - 9). The Court ordered that plaintiffs provide CITGO with all notes and/or documents they created during scheduled work hours related to work for CITGO by September 12, 2011. *Id.* at 9.

Request for Production No. 41 was also disputed, and it asked that plaintiffs produce to CITGO:

> All e-mails from a non-CITGO e-mail address that you have sent during your scheduled CITGO work hours or during hours you worked for CITGO since January 1, 2008.

(D.E. 17 at 8).

The Court ordered plaintiffs to respond to Request for Production No. 41 by Monday, September 5, 2011. (D.E. 17 at 8).

On November 1, 2011, a telephone conference was held at which CITGO alleged that plaintiffs were failing to comply with the Court's August 22, 2011 discovery order.

By order entered November 3, 2011, the Court made specific rulings applicable to *all* plaintiffs concerning the preservation and production of discovery, including, personal email accounts. (*See* D.E. 22, the "November 3, 2011 email order"). In the November 3, 2011 email order, the Court noted that certain plaintiffs had failed to comply with the August 22, 2011 discovery order because they had not yet provided CITGO with their respective searches for

3

responsive email, nor had they produced the responsive personal emails themselves.  *Id.*  The Court advised all plaintiffs that they were under a continuing obligation to preserve any and all documents responsive to CITGO's requests for production, including tangible and electronic information.  *Id.* at 1.  Plaintiffs were ordered to produce either: (1) the emails that were responsive to Interrogatory No. 16 and /or Request for Production No. 41; or (2) a list of their respective email addresses, along with relevant accounts and passwords by November 8, 2011. *Id. at 2.*  Plaintiffs were ordered also to provide specific information to CITGO concerning the number of hours for which they were seeking overtime compensation, as well as any and all notes and documents related to work performed for CITGO.  *Id.* at 3.  Finally, CITGO was ordered to identify any plaintiff it believed had purposely failed to comply with the August 22, 2011 discovery order.  *Id.* at 4.  Those plaintiffs would be required to attend a November 18, 2011 evidentiary hearing to determine if their claims should be dismissed for violating the Court's August 22, 2011 discovery order, and in addition, if they would be liable for costs if their depositions needed to be reopened.  *Id.*

On November 18, 2011, an evidentiary hearing was held at which the following plaintiffs testified: (1) Rudy Ramirez; (2) William Waggoner; (3) Greg Smith; (4) Diana Rudell; (5) Chester Harrison; (6) Ronald Gaynor; (7) Ronald Stubbs; (8) Greg Salinas; (9) Luis Galvan; (10) Michael Weigel; and (11) Donald Hedrick.

On November 30, 2011, the following plaintiffs testified: (1) Jamie Requenez; (2) Robert Garcia; (3) Ciriaco Villareal; (4) Eduardo Martinez; (5) David Bellows; (6) Rudolfo Martinez; and (7) Steve Moore.

By order entered January 13, 2012, the Court dismissed with prejudiced the claims of all the plaintiffs who testified, save and except Chester Harrison, finding that they failed to participate in discovery, failed to properly supplement responses, and failed to preserve documents. (D.E. 31).

On January 18, 2012, CITGO filed a motion for summary judgment. (D.E. 32).

On January 24, 2012, the dismissed plaintiffs filed a motion for clarification (D.E. 33), which was denied. (D.E. 34).

On February 1, 2012, the dismissed plaintiffs filed a motion for reconsideration of the order of dismissal. (D.E. 35). On February 2, 2012, the Court denied the motion for reconsideration. (D.E. 36).

### III.   Plaintiffs Craig Corley, Jerry Davila, Russell Edlin, and David Ruiz.

On February 6, 2012, a telephone conference was held on CITGO's complaint that four of the remaining nine plaintiffs were failing to participate in discovery as outlined in the Court's November 3, 2011 email order. In particular, CITGO complained that plaintiff Craig Corley[1] had provided incomplete information concerning his email accounts, including passwords that did not work, and that plaintiff-employees Jerry Davila, Russell Edlin and David Ruiz were continuing to delete emails despite the Court's specific instructions to not do so. The Court ordered that an evidentiary hearing be conducted on February 23, 2012, and indicated that Mr. Corley could participate by telephone due to his being out of the country.

On February 23, 2012, the Court conducted an evidentiary hearing on CITGO's discovery complaints. Mr. Corley testified by telephone. Mr. Corley denied receiving a copy of

---

[1]Mr. Corley is no longer employed by CITGO.

the Court's August 22, 2011 discovery order.  DR[2] 1:25:34.  He confirmed that on November 8,

2011, he provided to CITGO five personal email account addresses.  DR 1:26:10.  He identified

a  Roadrunner account, a Yahoo account, and three email addresses in conjunction with his being

a  student  at  the  Rochester  Institute  of  Technology  ("RIT").    (*See* Ex. 1).[3]   He produced the

emails  addresses  to  CITGO  in  lieu  of  sifting  through  the  accounts  himself.    (*See* Ex.2).   Mr.

Corley testified that, after completing college, he no longer had access to the RIT email accounts

because the college "took them back."  One RIT email was closed in August 2009, and another

was closed in August 2010.  DR 1:27:40.  Mr. Corley claimed that he could not access his

Roadrunner account because he moved to Panama in June 2011.  DR 1:28:30-55.  However, he

admitted  that  he  had  not  attempted  to  access  his  Roadrunner  account,  despite  the  fact  that  he

knew he had been ordered to do so.  DR 1:29:45.  He obtained a new RIT email address after he

left CITGO, but he does not think CITGO is entitled to have access to this address because he is

not seeking damages after August 2010.  DR 1:33: 24.  Mr. Corley has not asked RIT for access

to any of his old email accounts despite CITGO's discovery requests.  DR 1:34:49.

    Mr. Corley testified that the Yahoo account was a "Spam account" that he did not use.

DR 1:37:20.  He testified that only spam mail went into it, and, after four months of inactivity, it

was automatically discontinued by Yahoo.  He admitted that it was inexplicably reopened again,

but without his permission.  DR 1:39:20.  Mr. Corley denied deleting any email from the Yahoo

account.  He admitted that he did not contact Yahoo or otherwise seek to preserve the contents of

---

[2] "DR" refers to Digital Recording.  The testimony noted is within 30 seconds, plus or minus, of the time given.

[3] Exhibits were offered by CITGO at the February 23, 2012 evidentiary hearing and correspond with the number assigned at the hearing.

this email account.  DR 1:40:00.  A screen shot of Mr. Corley's Yahoo email inbox dated January 24, 2012, reflected no email prior to November 8, 2011.  (*See* Ex. 3).

Plaintiff Jerry Davila testified that he had seen a copy of the Court's November 3, 2011 email order, (admitted as  Ex. 4), and in response, he elected to provide CITGO with his passwords to his two personal emails accounts, identified as "coach" and "tire depot", with Grande.  DR 1:43:41 – 1:47:50.  CITGO offered into  evidence a screen shot of Mr. Davila's "coach" email account dated November 11, 2011.  (*See* Ex. 6).  Mr. Davila testified that he has had the Grande "coach" account for approximately four years.  DR 1:49:41.  He acknowledged that, on November 11, 2011, the oldest email in the "coach" inbox was dated September 9, 2011. He did not know where all his earlier emails had gone, although he admitted that he routinely deleted emails.  He testified that he contacted Grande about recovering past deleted emails and was told it could not be done.

CITGO next introduced a screen shot of Mr. Davila's Grande "coach" email account dated November 28, 2011.  (*See* Ex. 7).  Mr. Davila acknowledged that the oldest email in the inbox now was dated November 21, 2011.  DR 2:04:00.  Mr. Davila acknowledged that 218 emails had been deleted during the seventeen days between November 11 and November 28, 2011, but he denied deleting them.  DR 2:04:10.  He testified that he contacted Grande, but that Grande did not have any means of determining how the emails had been deleted.  DR 2:05:00.

Mr. Davila testified that, in response to the Court's November 3, 2011 email order, he produced an email address identified as "tire depot" with Grande.  DR 2:06:50.  CITGO offered a screen shot of Mr. Davila's "tire depot" email inbox dated November 28, 2011, which contained three entries.  (*See* Ex. 8).  A screen shot of the "tire depot" inbox taken the next day,

on November 29, 2011, failed to contain any of the three entries from the day before.  (*See* Ex.

9).  Mr. Davila denied that he had deleted the three November 28, 2011 entries from the inbox,

but instead, that these emails were automatically forwarded or transferred to the "tire depot"

account or computer. DR 2:10:43.  Mr. Davila testified that he preserved the emails, but he did

not produce them to CITGO.  He brought a copy of the emails to the evidentiary hearing, but he

did not have a copy for CITGO, and this evidence was not admitted.  DR 2:28:20.  Mr. Davila

testified that, sometime in 2011, he placed notes on his computers at the tire depot with email

capability stating: "do not delete emails."  However, he admitted that he cannot be certain that

every email has been preserved. DR 2:30:15.

Plaintiff Russell Edlin testified that he did not recall seeing the Court's November 3,

2011 email order, but he did recall CITGO's discovery requests.  DR 2:33:50.  It was his

understanding that he was supposed to keep only emails from or received at work.  DR 2:34: 30.

Mr. Edlin testified that he elected to give CITGO access to his personal email account at Yahoo.

DR 2:36:11.  Plaintiff Edlin admitted that he has repeatedly deleted emails since April 2011.

DR 2:37:05. CITGO introduced screen shots of Mr. Edlin's Yahoo email inbox dated November

14, 2011.  (*See* Ex. 11).  Mr. Edlin acknowledged that, on November 14, 2011, he received two

emails.  DR. 2:39:06.  He acknowledged further that, between January 16, 2011 and March 17,

2011, the screen shot did not show any emails, and that he had deleted a number of emails for

that time period, although he could not testify as to the exact number.  *Id.*  There was also a

"gap" between March17, 2011 and June 14, 2011.  DR 2:40:18.  Mr. Edlin admitted that he

continued to delete emails after the Court's November 3, 2011 email order. DR 2:42:15.  CITGO

offered a screen shot of Mr. Edlin's inbox for November 28, 2011, and it no longer contained

8

mail from November 11, 2011.  (*Compare* Ex. 12 to Ex. 11).  Mr. Edlin acknowledged that the November 11, 2011 emails were no longer present in his inbox. DR 2:46:02.

CITGO introduced also from Mr. Eldin's Yahoo account a screen shot of the mail he had moved into his "trash" folder on November 28, 2011.  (*See* Ex. 13).  Mr. Edlin confirmed that he had in fact moved seven pieces of email from his inbox to trash on November 28, 2011.  DR 2:47:47.  Again on December 2, 2011, Mr. Edlin moved fourteen emails from his inbox to trash. (*See* Ex. 16).  Plaintiff Edlin testified repeatedly that he believed the Court's November 3, 2011 email order applied only to outgoing emails that he sent from his CITGO work station. DR 2:55:54.  Mr. Edlin stated that he may have watched golf videos while at work at CITGO, in addition to other sport videos, using a CITGO computer.  DR 2:58:50.

Plaintiff David Ruiz testified that he did not receive a copy of the Court's November 3, 2011  email order, and he believed that the instruction to not delete any emails applied only to work-related  email. DR 3:03:02.  However, at his deposition, Mr. Ruiz revealed that he had forwarded emails received at work to his personal email account, and in response, a CITGO lawyer asked if he could have access to his password and personal email, and Mr. Ruiz consented.  DR 3:03:52.  At the evidentiary hearing, CITGO offered a screen shot dated November 28, 2011 of Mr. Ruiz's AOL email trash folder.  *(See* Ex. 18).  The trash folder contained thirty pieces of mail between the dates of November 21 and November 27, 2011.  *Id.* According to the AOL policy, mail in this folder remains for 24 hours, and then it is permanently deleted.  (*See* Ex. 19).  Mr. Ruiz testified that he had not educated himself about AOL's trash policy, nor did he believe it was necessary to do so.  DR 3:09:50.

CITGO introduced a screen shot of Mr. Ruiz' AOL email inbox for December 5, 2011. (*See* Ex. 20).  Mr. Ruiz agreed  that a fair estimate of his daily emails received would be between four and five pieces of mail.  DR 3:12:00.  Mr. Ruiz acknowledged that there are dates on which there were no emails shown, and he admitted that he may have deleted emails from his inbox on those days.  DR 3:14:30.  Mr. Ruiz confirmed that, according to Exhibit 22, on December 25, 2011, he placed 36 emails in his AOL trash bin, dating between December 7, 2011 and December 25, 2011.   DR 3:17:14.  Mr. Ruiz confirmed also that, between January 23, 2012 and January 30, 2012 he transferred 32 emails from his inbox to the trash bin.  (*See* Ex. 23).  Mr. Ruiz admitted that he had deleted 98 emails from his AOL account between November 21, 2011 through January 30, 2012, despite the Court's November 3, 2011 email order.  DR 3:18:37.

## IV.     Discussion.

A district court may impose sanctions on parties found to have disobeyed the court's discovery orders.  *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994).  Further, the Federal Rules of Civil Procedure provide:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders.  They may include . . . dismissing the action or proceeding in whole or in part.

Fed. R. Civ. P. 37 (b)(2)(A).

In the Fifth Circuit, a Rule 37 dismissal is proper if the failure to comply with the court's order resulted from "willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct."  *Conner*, 20 F.3d at 1380 (internal quotations omitted).  Additionally, the violation of the discovery order must be attributable to the client, rather than the attorney, and

the violation of the order must substantially prejudice the opposing party.  *Id.*  Finally, dismissal is proper only if a lesser sanction would not have the desired effect.  *Id.* at 1381.  "Deliberate, repeated refusals to comply with discovery orders have been held to justify the use of this ultimate sanction" of dismissal with prejudice.  *Bonaventure v. Butler*, 593 F.2d 625, 625, 26 (5th Cir. 1979).

The conduct of the four plaintiffs herein warrants no less than dismissal with prejudice. First, CITGO sent discovery in April 2011 indicating that it wanted access to email so that it could evaluate overtime claims that are at the very core of plaintiffs' FSLA claims, but plaintiffs failed to comply.  Indeed, CITGO was forced to seek Court assistance as early as August 2011 due to plaintiffs' conduct.  A hearing was conducted, and thereafter, the Court detailed how plaintiffs were to preserve discovery, and in particular, email and work diaries.  (*See* D.E. 17). Despite these specific instructions, CITGO  returned again with complaints of deleted emails, and the November 3, 2011 email order was generated. (D.E. 22).  The November 3, 2011 order is a direct statement to plaintiffs of what actions are permissible, what actions are not, and the consequences of engaging in impermissible actions.  Indeed, concerning the deletion of emails, the November 3, 2011 email order cautions:

> . . .   If any Plaintiff deletes any of his personal emails after the date of the entry of this Order, the Court will impose on that Plaintiff a monetary sanction of one hundred dollars ($100) for each deleted email.  *See Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 619 F.3d 458, 460 (5th Cir. 210) ("A district court has the inherent authority to impose sanctions 'in order to control the litigation before it.'") (internal citations omitted).

11

(D.E. 22 at 2).

Mr. Corley, Mr. Davila, and Mr. Edlin testified that they did not receive a copy of the Court's November 3, 2011 email order, suggesting that they were not put on notice as to the scope of the discovery to be preserved for CITGO's inspection.  Mr. Diaz admitted that he read the order, but did not understand it to "really include" his personal emails.

These arguments are particularly disingenuous and offensive in light of the fact that seventeen co-plaintiffs were previously dismissed raising these same tired excuses.  (*See* D.E. 31).  It is almost incomprehensible that these four plaintiffs continued to delete personal emails through November and December 2011, and January 2012, while their co-plaintiffs' claims were at that moment being dismissed for doing that very same thing.  There is simply no excuse for the conduct of Mr. Corley. Mr. Davila, Mr. Edlin, and Mr. Diaz.

Plaintiffs' conduct has substantially prejudiced CITGO.   The discovery that was destroyed by plaintiffs may have been essential to CITGO's defense, and without it, CITGO is certainly disadvantaged.   Moreover, CITGO  has expended considerable funds in pursuing discovery that has led nowhere.

The Court finds that a lesser sanction would not effectively deter the plaintiffs in this case.   Indeed, plaintiffs were given previously the opportunity to remedy their disclosures failures, yet they persisted in dilatory tactics and in providing misleading information.  Lesser sanctions would have no deterrent effect.

At the February 23, 2012 hearing, CITGO moved for monetary sanctions against the four plaintiffs, as well as for dismissal of their claims, arguing that plaintiffs had intentionally deleted their personal emails and otherwise caused undue delay and cost in the discovery process.  DR 3:24:35.  The Court proposed that plaintiffs elect either: (1) dismissal of their claims against

CITGO with prejudice; or (2) that monetary sanctions would be determined and accessed, and the case held in abeyance until plaintiffs paid the sanctions in full.   DR 3:28:16.   Plaintiffs elected to dismiss their claims against CITGO with prejudice.   DR 3:29:30.   However, it was understood that, should plaintiffs' claims ever be reestablished, the issue of sanctions would again arise also.   DR 3:30:36.

**V.      Conclusion.**

Pursuant to Rule 37 (b)(2)(A)(v) of the Federal Rules of Civil Procedure,  the Court dismisses with prejudice all claims of plaintiffs Craig Corley, Jerry Davila, Russell Edlin, and David Ruiz against defendant CITGO Refining and Chemicals Company, LP.

SIGNED and ORDERED this 12th day of March, 2012.

Janis Graham Jack
Senior United States District Judge